# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**WILLIAM T. LUSK,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0670** (BOR Appeal Nos. 2055130 & 2055131)
                    (Claim No. 2019005597)

**SPARTAN MINING COMPANY,**
**Employer Below, Respondent**

# MEMORANDUM DECISION

Petitioner William T. Lusk, by counsel Lori J. Withrow, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Spartan Mining Company, by counsel Sean Harter, filed a timely response.

The issues on appeal are compensability and medical treatment. Mr. Lusk protested the following claims administrator's Orders: (1) the Order dated November 6, 2018, which denied a request for authorization for a consultation with Neurological Associates; (2) the Order dated December 5, 2018, which denied a request for authorization for an MRI of Mr. Lusk's left shoulder; (3) an Order dated April 2, 2019 which denied a request to add a left-shoulder sprain and lumbar disc displacement as compensable conditions; (4) the Order dated September 9, 2019, which denied a request for authorization for Cymbalta 30 mg; (5) the Order dated September 10, 2019, which denied a request for authorization for bilateral facet joint injections at L3-L4, L4-L5, and L5-S1; and (6) the Order dated October 10, 2019, which denied a request for authorization for an MRI of the lumbar spine. On February 11, 2020, the Workers' Compensation Office of Judges ("Office of Judges"), in two separate Orders, affirmed all six Orders issued by the claims administrator. This appeal arises from the Board of Review's Order dated July 30, 2020, in which the Board affirmed the Orders of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions.

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Lusk, a coal miner, reported that he was injured on September 7, 2018, when his feet became stuck in mud while ambulating. As he struggled to free himself, he suffered a twist injury to his back. Mr. Lusk was transferred to the Raleigh Regional Hospital Emergency Department where he complained of mid/lower back pain without radiation. X-rays taken of Mr. Lusk's lumbar spine revealed degenerative disc disease and spondylosis but did not reveal any evidence of an acute injury. Ward R. Warren, M.D., diagnosed a lumbar strain. Due to continued pain, Mr. Lusk visited Princeton Community Hospital on September 9, 2019, with complaints of low back pain, which radiated into his lower left extremity. Amos M. Lane, M.D., diagnosed radicular lumbar pain.

After receiving a diagnosis, Mr. Lusk signed two Employees' and Physicians' Reports of Occupational Injury or Disease, one on September 7, 2018, and the other on September 13, 2018. Mr. Lusk stated in his first injury report that he had injured his "back and leg" and in his second injury report he stated that he injured his "low back." Jackie D. Shorter, PA-C of Family Healthcare Associates noted that Mr. Lusk complained of back and leg symptoms and diagnosed lumbar strain and lumbar radiculopathy on September 13, 2018, and September 26, 2018. On October 1, 2018, the claims administrator held the claim compensable for a strain of the muscle, fascia, and tendon of the lower back.

An MRI taken of Mr. Lusk's lumbar spine at Princeton Community Hospital on October 12, 2018, revealed L4-L5 annular bulging and facet hypertrophy, which mildly narrowed the spinal canal and both neural canals, and L5-S1 right paracentral herniated nucleus pulposis with left-sided degenerative facet hypertrophy, which mildly narrowed the spinal canal and narrowed

the left neural canal. Kenneth Fortgang, M.D., a radiologist, interpreted the MRI and issued an Age of Injury Analysis report on October 31, 2018, concluding that the findings were chronic within a degree of medical probability. The MRI did not reveal specific acute findings.

A Progress Note from Family Healthcare Associates dated November 14, 2018, stated that Mr. Lusk was still having pain in the left shoulder with decreased range of motion. The assessment was left shoulder strain, lumbar strain, and lumbar radiculopathy. On the same date, a Princeton Community Hospital Radiology Report regarding Mr. Smith's left shoulder showed no fracture or subluxation.

Michael A. Muscari, M.D., who sought a consultation to Neurological Associates for Mr. Lusk due to his abnormal MRI, issued a report dated November 14, 2018. Dr. Muscari requested the neurological consultation on October 16, 2018, and the claims administrator denied the request on November 6, 2018, stating that the disc herniation at L5-S1 was due to a condition that predates the injury. Dr. Muscari disagreed with the claims administrator's decision and reported that Mr. Lusk suffered low back pain with radiculopathy, decreased range of motion, and increasing pain due to the disc herniation. Again, Dr. Muscari requested a consultation with a neurosurgeon, and he requested authorization of a left-shoulder MRI. By Order dated December 5, 2018, the claims administrator denied Dr. Muscari's request for authorization of a left-shoulder MRI, as the purported need for the requested procedure was not due to the compensable injury. Mr. Lusk continued to experience low back and shoulder pain, and on March 12, 2019, Dr. Muscari requested to add left shoulder sprain and lumbar disc displacement as compensable diagnoses. The claims administrator denied Dr. Muscari's request on April 2, 2019. Mr. Lusk protested the claims administrator's decision.

In a March 31, 2019, report, Ronald J. Fadel, M.D., indicated that he reviewed Mr. Lusk's medical records for a determination of the appropriateness for additional diagnoses of lumbar disc displacement and left shoulder sprain. Dr. Fadel, an orthopedic surgeon, stated that he was unable to find any reference to Mr. Lusk's left shoulder in the initial Report of Occupational Injury or Disease. Similarly, none of the provider records, physical therapy notes, or medical evaluations contain any comment or complaint regarding his shoulder until two months after the injury. Dr. Fadel questioned how such a shoulder injury with a level of pain as described by Mr. Lusk could go unmentioned/overlooked and unaddressed in previous records. As a result, Dr. Fadel concluded that a shoulder sprain should not be accepted as a compensable diagnosis in the instant claim. He added that a disc bulge was not a disc displacement, there was no objective evidence of compression of a neural element, and evaluation of the claimant revealed normal neurological findings, so he did not recommend that lumbar disc displacement be added as a compensable diagnosis.

In a Progress Note dated April 5, 2019, Family Healthcare Associates assessed Mr. Lusk with left shoulder strain, lumbar strain and lumbar radiculopathy. A request was made for a referral to specialists Rajesh V. Patel, M.D., and Andrew C. Thymius, D.O., for additional consideration of Mr. Lusk's low back and right leg pain conditions. In a Consultation Report dated April 17, 2019, Dr. Patel stated that Mr. Lusk was still in a moderate amount of pain and that any activity aggravates his pain. It was stated that he is unable to walk far before he has

pain. The assessment was right L5-S1 lumbar disc herniation, right sacroiliac radiculopathy, lumbar disc protrusion at L4-L5, stenosis secondary to disc protrusion at L4-L5, and right L5 radiculopathy. In order to avoid surgery, Dr. Patel believed that injections might help Mr. Lusk with his pain, and he wanted to seek a referral to a pain clinic for epidural injections at L4-L5 and L5-S1 on the right side. If the injections failed, then surgery would be entertained.

By Order of April 24, 2019, the claims administrator approved the request from Dr. Patel for referral to Dr. Thymius for lumbar epidural steroid injection. Dr. Thymius' assistant, Melissa D. Lilly, PA-C, who examined Mr. Lusk on May 20, 2019, noted lower-back and leg pain. Ms. Lilly did not reference any left-shoulder symptoms. Her recommendation was lumbar transforaminal epidural steroid injections, which Dr. Thymius administered to the right side of Mr. Lusk's back at L4-L5 and L5-S1 on July 11, 2019.

In a Progress Note dated May 29, 2019, Dr. Patel assessed Mr. Lusk with right L5-S1 lumbar disc herniation; right S1 radiculopathy; lumbar disc protrusion at L4-L5; stenosis secondary to disc protrusion at L4-L5; and right L5 radiculopathy. Dr. Patel explained that from a surgical standpoint, he was considering a decompression and possible fusion. An August 5, 2019, Progress Note indicated that Mr. Lusk had continued pain in his lower back and right leg, which was not responding to conservative treatment. The epidurals did not relieve his pain. Dr. Patel requested a repeat MRI of Mr. Lusk's lumbar spine to assess his possible need for surgery for disc herniations/protrusions.[1]

In her Office Note of August 22, 2019, Ms. Lilly stated that Mr. Lusk had no relief from back pain for over a month. At times he feels like there is an electrical shock going down his legs. He also felt depressed. The plan was to start Mr. Lusk on Cymbalta, which would assist both depression and pain. He was assessed with intervertebral disc displacement, lumbar and lumbosacral region; spinal stenosis; spondylosis, lumbosacral region; and intervertebral disc degeneration of the lumbar and lumbosacral regions. A request was issued for the medication Cymbalta by Dr. Thymius. By Order dated September 9, 2019, the claims administrator denied the request regarding authorization for the medication Cymbalta under the belief that the medication was requested to treat a condition that is not related to the work injury of September 7, 2018.

On October 4, 2019, Dr. Fadel issued a Record Review Report documenting that Mr. Lusk has a protracted history of low back injuries/issues, including degenerative issues with annular bulging at L4-L5, a small to moderate sized paracentral herniated nucleus pulposus, and left-sided degenerative facet hypertrophy at L5-S1. Dr. Fadel was asked for an opinion on whether surgery would be necessary to treat the compensable injury of September 7, 2018, or if the injury was due to a preexisting condition. Dr. Fadel opined that surgery has been a reasonable consideration for Mr. Lusk's condition as far back as 2006. Because the most recent MRI failed

---

[1] By Order dated October 10, 2019, the claims administrator denied Dr. Patel's request for authorization of the repeat lumbar MRI, as the purported need was due to a non-compensable condition. Mr. Lusk timely protested the claims administrator's decision.

to reveal any acute change at L4-L5 or L5-S1, Dr. Fadel could not support aggravation of preexisting disease versus repeat exacerbation of the acquired age-related, degenerative spondylopathy in the lumbar spine. Although Dr. Fadel felt that the recommended surgery is in the best interest of Mr. Lusk, he stated that coverage for the procedure should be through his personal healthcare resources and not workers' compensation. Finally, Dr. Fadel recommended a referral to a pain clinic to try epidural injections at L4-L5 and L5-S1 on the right side to see if injections may alleviate Mr. Lusk's pain.

Mr. Lusk was seen by Dr. Thymius on October 16, 2019, and reported that he was not able to start his treatment with Cymbalta because the claims administrator did not approve the medication. He notified Dr. Thymius that Dr. Patel recommended L4-L5 and L5-S1 surgery, but the request was denied by the claims administrator. The assessment was other intervertebral disc displacement, lumbar region. The recommendation was that Mr. Lusk follow-up with Dr. Patel and that the two level fusion surgery would be appropriate.

In a Supplemental Report dated October 26, 2019, Dr. Mukkamala stated that he had evaluated Mr. Lusk on three occasions, December 4, 2018; February 25, 2019; and September 12, 2019. During those occasions, Mr. Lusk did not state that he had injured his shoulder. He added that Mr. Lusk had not reported having injured his left shoulder during any of his examinations with Family Healthcare Associates before November 14, 2018. Dr. Mukkamala diagnosed a lumbar sprain and opined that there was "no credible objective evidence that the claimant sustained left shoulder sprain or any injury to the left shoulder as a result of the compensable injury of September 7, 2018." Dr. Mukkamala concluded that the left shoulder symptoms that were reported more than two months after the compensable injury of September 7, 2018, were not causally related to the compensable injury. Dr. Mukkamala further stated that an MRI of the left shoulder was not required because of Mr. Lusk's compensable injury of September 7, 2018, because there was no credible objective medical evidence of a left shoulder injury at that time. Regarding the lower back compensability issue, Dr. Mukkamala opined that Mr. Lusk did not sustain lumbar disc displacement as the result of the compensable injury of September 7, 2018. He added that the mechanism of injury, which was a twisting injury, was suggestive of a lumbar sprain, and unlikely to cause a disc herniation. Dr. Mukkamala concluded that it is clear from prior CT scans taken of Mr. Lusk's lumbar spine on June 10, 2006, that he had lumbar spine disc herniation prior to the compensable injury of September 7, 2018.

Marsha Lee Bailey, M.D., evaluated Mr. Lusk on December 10, 2019, and diagnosed chronic lower back pain and bilateral leg pain, which predated the instant claim by twelve years. Dr. Bailey compared CT scans and MRIs taken of the lumbar spine before Mr. Lusk's compensable injury of September 7, 2018, with the MRI taken of his lumbar spine on October 12, 2018, and found that the disc abnormalities at L4-L5 and L5-S1 had actually improved between September 29, 2017, and October 12, 2018. Dr. Bailey expressed a strong opinion that the MRI taken of Mr. Lusk's lumbar spine on October 12, 2018, revealed no acute findings related to his compensable injury of September 7, 2018. Dr. Bailey also stated that Mr. Lusk's ongoing lower back and lower extremity symptoms and need for surgical treatment were not the result of the compensable injury of September 7, 2018. Dr. Bailey concluded that Mr. Lusk had

reached maximum medical improvement from the injury and that no further medical care or treatment was medically needed for the compensable injury.

In a Final Decision dated February 11, 2020, the Office of Judges concluded that it is more likely than not that Mr. Lusk did not sustain a left shoulder sprain or lumbar disc displacement on September 7, 2018. As a result, the claims administrator's Order of April 2, 2019, was affirmed. In a separate Final Decision dated February 11, 2020, the Office of Judges determined that it is more likely than not that the requests for Cymbalta, a lumbar MRI, a left shoulder MRI, a neurological consultation, and lumbar injections are not medically required or necessary treatment for the compensable injury. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the two decisions dated February 11, 2020.

After review, we agree with the decisions of the Office of Judges, as affirmed by the Board of Review. A clear preponderance of the evidence establishes that Mr. Lusk did not sustain a left shoulder sprain in the course of and resulting from his employment on September 7, 2018. Mr. Lusk did not identify his left shoulder as a body part that he injured in reporting his injuries. Likewise, neither of the providers who completed the injury reports diagnosed a left shoulder injury or left shoulder sprain. The medical record indicates that Mr. Lusk has reached maximum medical improvement from his compensable lumbar sprain/strain of September 7, 2018.

Affirmed.

**ISSUED: February 25, 2022**

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats, sitting by temporary assignment.